All right, we're sitting out to hear United States versus Recio and Ms. on behalf of Larry Recio. We are here today because of song lyrics posted on a Facebook account eight and a half months after the offense at issue in Mr. Recio's trial. The Facebook post should not have been admitted. It was not Mr. Recio's words or statement. The post was not relevant and was unfairly prejudicial and therefore reversal is required. As outlined in our briefs on May 15, 2015, two police officers testified at trial that they observed Larry Recio sitting on a stoop in a high-crime area in Capitol Heights, Maryland, with what appeared to be the butt of a black handgun protruding over the top of his pants. Their testimony was that he began running when he observed them and that one of the officers observed him toss the weapon at him. So what is your primary objection to the Facebook post? Is it a lack of authentication or is it a rule 403 objection or which one is it? It's frankly, Your Honor, difficult to pick one thing that's objectionable about the post. The authentication, we believe, goes to the reliability of the post, but really at root it's neither relevant and it was unfairly prejudicial, particularly compared to its probative value. So whether you analyze it under Rule 801 or under Rule 404, you still come down to the analyses under Rules 401 and 403, which require the post to be both relevant and to have a more probative value. Well, it seems to me that the court relied more heavily on the fact that it was a statement relevant to the conviction in this case. It wasn't a prior acts conviction. That was addressed also because you raised that point. Yes. But the issue is whether this is probative or the jury could conclude it's probative in any sense of the conduct in this case. And the argument, I suppose, is that he selected a rap phrase that was applicable to him and stated, I got to keep my weapon to protect me in my belt, whatever it is. And whether it's true or whether it is probative to any great extent would be up to the jury. But why isn't it relevant to the conduct in this case? It's basically his position is, I've got to carry a gun to protect myself. Well, Judge Niemeyer, a couple of things in response. First of all, the district court's order did specifically refer to Rule 801. However, the analysis under Rule 404 remains relevant for several reasons. First of all, this post and what it says is the definition of character evidence. It's going to who this guy is. This is the kind of guy who carries a gun. Second of all... No, no. I didn't want this post there. The post basically is, the poster is basically saying I carry a gun to protect myself. And he's using a rap thing to say it. Now, whether it's effective and how probative it is, that's a factual question. But it's clearly relevant to the reasons for carrying a gun and justifying his carrying a gun several months before. That's where the timing comes in. So you say the timing is too big for it to be probative? Particularly when you look at the words of the post. Well, isn't that for the jury to decide? It's not, Your Honor, because if the government wants to rely so heavily on the word always in this post, then you also have to look at the other words of the post. If the post, for example, had said it's always been tucked, I've always had this tucked, maybe we'd have a different case. But the fact that the post said it is always tucked, and yet the government argues that that is relevant and probative of what happened eight months earlier, you've got to ascribe importance to each of these words. If they're trying to say that this rap lyric, which wasn't my client's words, therefore is something that he's embraced, then you need to look at the meaning of all of these words. And when the government argued this is forward-looking and backward-looking, they turned this into something that's not only relevant to what happened eight months earlier, but what continues to be relevant. This is the kind of guy who always carries a gun. And that caused some of the trouble here, Your Honor, because when you then create an impression with the jury that this is a bad person, that's where the propensity argument comes in. That's where Rule 404B becomes relevant. No, 404B relates to other crimes and acts, conduct, propensity to show this one. But it was clearly offered to try to prove in this case that his carrying a gun is justified because he thinks, I keep tucked to protect myself. I mean, what if he says I'm the enforcer and I always have been, and several months before he enforced, he hit somebody with a gun and it seems to me these are evidentiary questions. But I don't think the government, there's a bad act of another occasion. I think the government was offering it for this case. And so the question is, does it fall under 801? I think that's your main argument if you have one. I do have an 801 argument, Your Honor, but I will not agree. I do not agree that this only went to a Rule 801 analysis for that day for two reasons. The government offered it at the motions hearing under both rules, and then the government argued in closing and in rebuttal that this is a violent song, this is both backward-looking and forward-looking. So they asked the jury to infer not only that he had a gun on May 15, 2015, but that he always, since then and continuing until now, had a gun. And that's where your point about Attorney Judge Niemeyer, if you want to look at a statement on January 30, 2016, as, oh, I have a motive to tell people I always have a gun, back off. That is forward-looking. That's stay away from me from now going forward. That doesn't immediately prove that eight and a half months earlier, let alone eight and a half days earlier, this person always had a gun tucked. But moving to the 801 analysis. He's bragging. Well, if he's bragging, it's forward-looking, Your Honor. No, but is it a bad act at all? Is the statement a bad act at all? I mean... Everybody wants to carry and can carry guns in the United States of America, right? Except felons. Except previously convicted persons. Yes, Your Honor. And that's why if you... What I worry about is you just have additional evidence of a crime being labeled as a bad act. And that can't be. I mean, this is additional evidence that he possessed a gun. And additional evidence that someone commits a crime can't just casually be labeled character evidence or bad character evidence. Otherwise, we're going to have Rule 404B exclusions cover everything. But if you compare a Facebook post where there are, as you mentioned earlier, Judge Wilkinson, authentication questions, it is hearsay because it's exactly the words from a song. That's a different question. And it really comes down to the evidence linking it to his account and also to the 801 question about whether he adopted it. But the point is, I was simply relating, was responding to your points about 401, 403, and 404. And as to the 401 point, I could see a district judge thinking, yes, a jury could look at this as relevant to the 922G count. As to the 403 question, I don't see... That rule mentions unfair prejudice. And I don't think that further evidence of a crime that's being tried is unfair evidence. And then 404B mentions prior bad acts. And I'm not sure that posting a Facebook lyric on one's account, even if it's a rap lyric, people do that all the time. And I'm not sure that that really counts as a prior bad act at all. And I would agree. And if the analysis had excluded it, then we would say there's not a problem. But 4041, the question is, were they some kind of bar to admission? 401, 403, 404, were they a bar to admission? They're all discretionary calls on the part of the district court. Then after you go through 401, 403, 404, and ask if they are bars to admission, and the discretionary call the district court with a no, then you go, well, what allows it to be admitted over the... And you raise an 801 objection. But why wouldn't it be a party admission if you posted on your own Facebook account? Then you have eliminated the distance between yourself and the remark. And you've essentially adopted the remark by claiming ownership to it through your Facebook account. And once you've done that, you're going to open yourself up to an 801 party admission. And statements have been analyzed under Rule 404B. They've been analyzed under 801, particularly rap lyrics and appearances in rap videos. So there have been cases that have analyzed things like lyrics like this under both analyses. But under Rule 801, you still need to look at Rules 401 and 403. First, you've got to get past under 801 D2A, was this his statement? If you look at it under 801 D2B, did he adopt it? We believe neither threshold was met. This is... Well, it's agreed it was his Facebook, wasn't it? Well, we don't know that, Your Honor. We don't know that, and I don't want... I thought you didn't challenge your authenticity. The authenticity was challenged. There were four email addresses that were associated with this account. It had a vanity name. But that's not your point here, is it? Well, it's not my... Let's assume it's authentic, right, this point. If we assume it's authentic, you still have questions about the reliability because of... Well, he posted it. That was not something... Well, that's part of the authenticity. Let's assume he posted this. He posted this on his Facebook, and so it links it to him, and he said, this is meaningful to me. He paraphrased... He's a pretty good quote, but it's a little different from the actual rap quote. I compared the two. I was going to say, I'm impressed that you are that much a fan of Bloody Jay, Your Honor. No. The truth of the matter is, I just learned about Bloody Jay. As did I, Your Honor. As did I. And the government makes a big deal about how there weren't quotes... Are you still pressing the authentication? I don't think it's necessary for my argument, Your Honor. I don't want to get bogged down on it because I think there are more important points to be made. So you're willing to agree to the fact that it's... Just for authentication purposes, it's authentic? Even if we assume, for purposes of the argument, that the Facebook account belonged to him or that he posted it, that still doesn't prove that it's his confession. That's what the government needs it to be here. Not a confession. Basically, he's stating, whether it's braggadocio or whether it's perspective or both, he's basically stating, I carry a gun to protect myself, and he thought it's a short quip from the rap. There are many interpretations that are possible from that, the fact that he posted that line and from the line itself. And that's what you're arguing. Yes. You argue those to the jury. Well, but... It's a weight argument. It's not an admissibility argument. Well, but it's got to be relevant before it can be admitted. And when there are that many different arguments, that many different interpretations, that it could be bragging, that it could be, I like rap music, that it could be, stay away from me. Here, he's saying, I carry a gun to protect myself. And I always carry a gun. I always carry a tuck. He's adopting that view. Yeah. And... He's arguing his own words. It could be a gun. It could be a knife. It could be lots of different things. And with many reasonable... But let the jury interpret that. I understand the point, Your Honor. But it's got to be something that the jury can easily understand. And when something is open to multiple interpretations, it shouldn't just be a question of weight. You have trouble understanding? I didn't. When I saw that phrase, I knew exactly what he was talking about. There are multiple interpretations. And we have to put ourselves in the position of a reasonable juror. If it's something that the jury could interpret in different ways, then it's something that's potentially going to be confusing for them. And that's where we have to get into the weighing. The way the jurors make findings on it. In this case, we have two police officers testifying that he did have a gun tucked. Right? That's... Yes, Your Honor. Which leads one to question why it was that the Facebook post was necessary. Ah, but we know the government can just load up as much evidence as they want in determining necessity. That's Hornbook law, right? Well, Your Honor, the necessity still needs to go to an element that's actually at issue in the case. And I understand that the government contests whether it was relevant here under... But does he concede he had a gun tucked? Well, the question... It is relevant, right? Not to the question of knowledge. And that's what they argue this is relevant to. What's relevant to knowledge of what? Well, knowing possession. That's their argument, that this was relevant. This is necessary because it's relevant to the question of knowledge. Did he know that he had a gun? Did he pretend that he had... That unknown to him, he had a gun tucked? That's not his argument. No, that's not, Your Honor. That's exactly the point. That the question is, did he have it or did he not? Did they believe the police officer or not? But it's not a question of intent or knowledge, is it? That's exactly right, Your Honor. But it's still... But that still doesn't answer the point as to relevancy because even though it's not... Even though all it requires is that you be a felon in possession, does it require knowing possession? Knowledge wasn't something that was necessary for them to prove. All right. But it's still... You still have to... It's relevant to possession as possession. Even if you look at the words and say that these could arguably be relevant, what the that's what I want to make sure I spend time emphasizing. Let me ask you one thing on this point. You submitted a case, what was it, United States v. Leidy or what was it, a D.C. Circuit case? In the 28-J letter, Your Honor, Linn-Aris. Okay. And what was the date of that case? It's a 2004 case, Your Honor. All right. Well, that's what I want to take up with you. A 2004 case was available for you at the time that you wrote your opening brief and your reply brief. It could and should have been included in those briefs. As I understand it, 28-J is for supplemental authority that comes in after the time of the case. Cases that are available to counsel and could be discussed in briefing and in argument are not appropriate subjects for 28-J. Why was that not discussed in your briefs when it had been a matter of public record for as long as it had? I apologize if I did not follow proper procedure of this Court. I wanted to make sure I brought the case to the Court's attention. The government emphasized the importance of proving knowledge under the necessity process. All right. But that's what you do in a reply brief. Yes. I can only apologize, Your Honor, and just again reiterate that I wanted to make sure I addressed that point. I know. But the points that you want to make sure you address, you have the government's argument. You can address it in the reply brief. I'm not interested in making a big point of it, but I want, in the future, please reserve the 28-J submissions, if you would, for authority that comes to light recently after the point of argument and etc. Otherwise, we just get an exchange of letters involving cases that should have been discussed at the time when the initial briefing was completed. Do you understand where I'm coming from on this? Yes, Your Honor. I appreciate the clarification and again apologize. It's not something I'm anxious to make a big point on, but it is something I would prefer your office, a practice that I would prefer that your office used in the future, okay? I will make sure that this is communicated. I see my time has expired, Your Honor. Well, you've got some rebuttal. Yes. Thank you. Ms. LaCourie. Thank you, Your Honor. Good morning. May it please the Court, my name is Francesca LaCourie and I represent the United States in this matter. Because Judge Hazel did not abuse his discretion in admitting the defendant's statement as an adopted admission, not as for evidence, but as an adopted admission, and denying the defendant's motions for... What do you think is the pathway to admission here? Is it 801 D2A or whatever it is, just a part of the admission? It is the government's position that that is the pathway for admission and that is the the statement was admitted as an adopted admission, and then further during the charge conference, when Judge Hazel tells counsel that he's not giving the instruction on the 404B evidence because using his words... Is every statement on a Facebook account liable to admission as an adopted admission? I do want to understand, sympathetic to the argument, but I also want to understand what you would say was the limiting principle. Yes, Your Honor. Certainly the government is not making a blood brush argument or asking this Court to decide that in every case where a defendant makes a posting to his Facebook account, that posting should qualify as an admission. What makes this an adopted statement? Well, the reason why it is an adopted statement is because it was pulled from the song as a whole, that one line, affirmatively typed word by word into the posting, and then posted for all of his social media community to see, thereby... So if he had reprinted or he had adopted the entire song, and not just pulled out those two lines, you'd have a closer case, would you not? Yes, Your Honor. Certainly, the facts, there may be an argument there as well, but it would be a closer case than it is here where he... Pulling out those two lines in particular was what was important here, is that not? Absolutely, Your Honor. The context was very important here. Of all the lines he could have pulled out... And of all the songs... I assume Judge Nima would be the one to tell me, but I assume there are a lot of good lines in that song. But he pulled out those two, and that's... You don't construe my questions as adoptions of the BJ or whatever is the rap text, do you? Pardon me, Your Honor? You don't have me adopting the rap text as my own, do you? I do not, Your Honor. And certainly, just because one sings a song or one quotes a song does not necessarily mean... Well, actually, in this case, and I think it's important to the point that you're discussing with Judge Wilkinson, is that he also stylized it. He changed words that were written out into letters. He changed the order of a couple of the words. And he omitted quotation marks. Yes, there was no attribution to the artist. And so that indicates some kind of adoptiveness. He was creatively using it. Yes, Your Honor. And certainly, the timing is important here. Again, the context really He'd already been charged when this was posted. He knew he'd been charged with having a firearm tucked in his waistband, and yet this is the posting that he chose to make to his Facebook account. And as to knowledge and certainly necessity, those are arguments that are kind of outside the purview of the district court's ruling. Why are you going into that? That's the Queen's standard, a 404B, isn't it? Yes, Your Honor. And the reason why I'm... It's not under 404B. It was a statement that's relevant to this conviction. That's exactly what I'm saying. I'm saying that the appellant's argument as to the four prongs that were stated in Queen are not relevant to this inquiry here, because it was clearly admitted as an adopted admission and not as 404B. Certainly, the government's argument at the pretrial conference may have not been the most artful, and I can say that because I'm the one that made that argument. But in the filing prior to the pretrial conference, and certainly in the ruling of the court, this was clearly admitted not as 404B, but as an adopted admission. And Judge Hazel did not abuse his discretion in doing so based on the facts and the context of this very particular case. Excuse me. And as to the fact that the lyric... How much play did this statement have in the trial? Not much, Your Honor. Not a very long trial, though. It was not a very long trial, but... You talked about it in opening argument? No. You talked about it in closing argument? For maybe 30 seconds. Not much longer than that. How long was the closing argument? I don't recall exactly, but it was a lot longer than the amount of time that I spent focused on this particular line, the defendant's statement. The majority of the closing, the majority of the trial, the entirety of the opening was discussing the testimony of the two eyewitnesses to the defendant's possession of the firearm. The two police officers, each of whom, from a different vantage point, saw the defendant in possession of the firearm. And the testimony of these witnesses was corroborated by contemporaneous radio runs. And so even if this court were to find that Judge Hazel abused his discretion in admitting this statement as an adopted admission, it is the government's position that that error would be harmless, given the overwhelming evidence that existed outside of this statement. It isn't even a constitutional error. It's an error at most. I don't think it's an error, but to be honest, it's not under the Chapman standard of harmless beyond a reasonable doubt. That is correct, Your Honor. Because it's not a constitutional infraction. Yes, Your Honor. And so that is why the government would argue that Judge Hazel was certainly well in his discretion in admitting this statement as an adopted admission. But if this court were to find otherwise, given the amount of evidence that was presented, yes, it was a short trial. But looking at the quality rather than the quantity of the evidence, the eyewitness testimony as to the defendant's gun possession, the government would- It's very rare that we reverse a district judge on a 401 or 403 matter. Trial judge, there's one thing they are charged with doing is determining relevance to the matter before them and weighing unfair prejudice against probative value and that kind of thing. It's a rare bird to find a 401 reversal. I'm sure they're out there at some point, but it's very unusual. Yes, Your Honor. And the government would submit that this is not a case in which it would be appropriate to do so, given that there- The jury did have some problems here, right? Yes, the jury had- No, and Your Honor, the government would submit that that's particularly notable, because this was quite a vocal jury. It was a very deliberate and a very thoughtful jury. And the jury, including the verdict note, there was a total of six notes. And those notes addressed very specifically the radio runs, the firearm, and the first question, which was a bit vague, but never specifically addressed what their actual concern was. And yet, there was never any note, never any question about the Facebook posting. And notably, on the second day, after the note that they wanted to see the gun, when they were in front of Judge Hazel, one jury did not even hesitate to speak in front of Judge Hazel and explain the reason why they wanted to see the gun is because they wanted to weigh how heavy the gun was. They actually wanted to hold the gun and the bullet at the same time. So this was not a shy jury. To see if he could tuck it. Or either to see if he could tuck it or possibly to see how high it could have gone in the air was kind of our speculation. But this was a jury that was not shy about asking questions. And yet, there was not one question about the Facebook posting during the entirety of their deliberations. And certainly, the verdict note indicated just how thoughtful they were. How did the Facebook posting get in? Turning to the authentication, the government laid a proper evidentiary foundation to show When a witness introduced it or you introduced the doctor, how did you get it? Through two different methods. First, the records as a whole were authenticated pursuant to a business record certification pursuant to 90211. And then a special agent who had reviewed the contents of the records also testified as to some of the facts which indicated that the account at issue actually belonged to the defendant. Specifically, that there were 174 photographs from the account which had existed since 2007 which were either posted by the user or depicted. All of those photographs depicted the defendant including a number which would be colloquially classified as selfies. And his testimony was that this was on that? Yes, Your Honor. There were also 38 videos relating to the defendant, the username of the The witness was subject to cross-examination? That he was. And in fact, during cross-examination, the defendant brought out the entirety of the song. Again, the government notably only brought out the defendant's actual Is it a song or is it a rap? Is rap song? It just sort of goes on and it's a chant. I believe that it would be classified as a rap song. I've seen the video. Bloody Jay was new to me as well. But it was chanted essentially in court. The entirety of the song during cross-examination and the government Who chanted it? Who rapped it? Who sang it? I can't. It's within the record. A government witness? No, it was played. Is that what you're saying? It was not played. The text was introduced, but I believe part of the song was actually said aloud. I can't recall if it was by defense counsel or defense counsel asked the witness to read it. I don't want to misquote the record. That's all right. I'm just being a little curious. That's nothing. Okay. But it was definitely not played. No song, no video was played in court. Was there a lot of cross-examination on this? No, there was not. Okay. And indeed, in defense counsel's closing, he admitted or agreed that the posting at issue was his client's. And certainly his statements can't be taken as evidence. But the fact that he was not arguing to the jury that the posting was made by someone else or someone had hacked into the account. There's that one statement, but you're right. It can't be. That's not it. He hasn't given up his case on that. Certainly not. But it speaks to the strength of the evidence of authenticity that was presented to the jury. And certainly, it's the government's position that a sufficient evidentiary foundation was laid so that the district court, as a gatekeeper, was within his discretion in allowing the jury to decide if- Opposing counsel seem willing to assume authenticity. Yes, Your Honor. And to move into the question of whether it was validly admitted for Rule 401, 3, 4, and under 801 D2. Yes, Your Honor. And the government submits that because the statement was an adopted admission and because it was highly relevant to the issue at hand, the admission of the statement was not an abuse of discretion. I think we understand your point and your briefs. I'm going to ask my co-panelists if they have any questions. We have no further questions. Thank you. Thank you, Your Honor. And the government relies on its submissions and the arguments that it reports today.  Yes, Your Honor. There are a few things I'd like to address. First, Judge Motzen, in response to your question to counsel about whether the jury had any questions about this piece of evidence, we believe they did. The jury, note number four, that the jury sent about an hour and a half into their deliberations, they asked, is the charge that the defendant was in possession of the particular weapon stipulated to or a firearm, and this is italicized, as in, quote, any firearm, which would be illegal. The reason they asked that question, it's reasonable to interpret, is, oh, we heard evidence that this is the kind of guy who carries a gun every day. He, quote, unquote, always carries a gun. So is it okay if we find him guilty of having had a gun on a different day? Otherwise, what's the reason to ask that question? The instructions focused on the Smith & Wesson weapon. The instructions focused on May 15, 2015, but yet the jury comes back and asks the question. But that confusion was well-corrected when the judge pointed out it was a particular gun with a particular serial number that had to be proved. So that now the jury could decide whether the note had any real probative value or not. But at that point, Your Honor, the trial had already concluded, the jury's minds had already been settled, and then... But I agree with Judge Niemeyer. I would think that that would actually... The sum total of the question and the answer is something that does not help you. Well, I understand the point, Judge Motz, and certainly it's... The fact that the jury asked the question and it was addressed has to be taken into consideration. But it's like asking for a bell to be unrung. The impression had been created... Except it was clarified and they were instructed to focus only on a particular gun on a particular date. Yes, that's accurate, Your Honor. And so now the jury goes to that task and they actually want to see the gun. And they go on for another day and a half of deliberating. So if it had been that clear to them, if the note and the judge's response had been that clarifying, then why, in a single-issue trial with two witnesses whose accounts mostly match each other, do they continue to deliberate for an additional day? I think that the hypothesis that you come out of that is that everybody agreed that if you could rely on the rap lyrics to show that that was the conviction, that's all they had to do, then they would convict. But the judge instructed them, no, it has to be a particular gun, it has to be this gun. But then they left the rap lyrics behind them. I mean, what relevance do you have? Well, it certainly causes one to look at each of the pieces of evidence that came in in this case. And all of the cases of this court do the same, that you want to look at how central was the potentially inadmissible evidence to the issues in the case, how big a deal was the error. And so I want to pick... It wasn't that big a deal. I mean, you and your closing argument, you sort of said it was a comical reference to a rap. And then the government comes in and answers you and says, well, it's not comical, it's pretty serious. But then they say, they say, basically, look, that's not important to our case. You can set it aside. They say, and I submit to you that it is relevant, but it's not making or breaking the case. You could ignore it if you want to. I submit to you that... All the evidence focused on the, or the bulk of the evidence focused on the observation. Well, it's interesting to say that Judge Mutz alluded earlier of the two police officers on one particular occasion, on one particular day. It wasn't a trial about, oh, we generally see him carrying a rap. The question was, before the jury, was quite specific. And not only were the judge's went through a specific incident at a specific time and on a specific day. It did. That's true, Your Honor, but that's what makes the admission of this evidence that didn't relate to that something that this court should consider. The fact that the government... I hear you, but again, I think that's a matter of weight. It could be, but then it's relevant to the harmless error analysis, Your Honor, because to the extent that that piece of evidence came in and the government argued, to your point, this is a pretty violent lyric. It's about shooting somebody. It's backward looking and it's forward looking. Again, created the impression for the jury that this is the kind of guy who just because he posted this on one day is the kind of guy who always carries a gun. And that gets to your question to opposing counsel, Judge Niemeyer. Not every Facebook post is an admission. Putting one line on someone's Facebook page doesn't necessarily mean this is my confession. And that's why we believe that this court should reverse. Well, we thank you. Thank you. Come back down and say hello and then we'll move into our final case.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, Diana Gribbon Motz